UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X

STAR INSURANCE COMPANY a/s/o Ends Meat LLC dba [sic] Salami Boys Inc. 3 Bala Plaza East, Suit [sic] 300 Bala Cynwyd, PA 19004,

Plaintiff,

-against-

WJFP BUILDERS CORP. 62 Elwood Avenue Staten Island, NY 10314, and BIZDESIGNS 241 37th Street Suite 440 Brooklyn, NY 11232,

Defendants.

---------------------------------------------------------- X

**REPORT & RECOMMENDATION**
24-CV-8313 (AMD)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiff Penn Star Insurance Company, as subrogee of Ends Meat LLC, asserts negligence claims against Defendants WJP Builders Corporation and BizDesigns. Presently before the undersigned on referral from the Honorable Ann M. Donnelly, United States District Judge, is Plaintiff's motion for default judgment against Defendant WJP Builders Corporation. For the reasons set forth below, the undersigned respectfully recommends the Court grant Plaintiff's motion.

## BACKGROUND

The following facts are taken from the Complaint and Plaintiff's motion for default judgment and accompanying documents. These facts are assumed to be true for the purpose of this Report and Recommendation. *See, e.g.*, *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

## I. Factual Background

Plaintiff Penn Star Insurance Company is a property insurer with a principal place of business in Pennsylvania. (*See* Complaint ("Compl."), Dkt. No. 1 ¶¶ 2, 5.) Defendant WJP Builders is a construction company with a principal place of business in Staten Island, New York. (*See id.* ¶ 3.) Defendant BizDesigns is an architectural and interior design consulting firm with a principal place of business in Brooklyn, New York. (*See id.* ⁋ 4.)

Plaintiff entered an insurance agreement with an entity called Ends Meat,[1] which included coverage for loss or damage to a property at 254 36th Street, Unit 38, Brooklyn, NY 11232 (the "Property"). (*See id.* ¶¶ 6, 18.) That agreement provided for insurance coverage of $162,500. (*See* Sworn Statement in Proof of Loss, Dkt. No. 24-4 p. 2.)

At some point, construction work was done at the Property, which included reinstallation of a commercial wall-mounted broiler in the kitchen (*See* Compl. ¶¶ 7–8.) Defendant BizDesigns was the architect responsible for the plans related to this construction, and Defendant WJP Builders was the general contractor in charge of the construction. (*See id.* ⁋⁋ 7, 9.) According to Plaintiff, the fit-out plans made by Defendant BizDesigns specified a "thermally insulated wall with stainless steel finish" be installed behind the broiler. (*See id.* ⁋ 8.) But, among other things, Plaintiff says these plans did not explicitly prohibit use of combustible materials in the construction of the wall. (*See id.* ⁋ 9.) Plaintiff alleges Defendant WJP Builders placed a flammable piece of plywood in the wall behind the area where the broiler was installed. (*See id.* ⁋ 8.)

[1] Plaintiff's submissions refer to the insured as both "Ends Meat LLC" and "End's Meet LLC." (*See* Compl. ⁋ 1, Plaintiff's Amended Motion for Default Judgment (Pl's. Mot."), Dkt. No. 24 p. 1.) For purposes of this recommendation and to avoid confusion, the undersigned will refer to the company as Ends Meat.

On January 1, 2022, a fire ignited behind the broiler and caused damage to the Property. (*See id.* ¶ 10.) Plaintiff alleges the fire started when an exhaust fan pulled heat into an opening in the space where the broiler was mounted, which had not been properly closed, and that heat ignited the flammable piece of plywood in the wall. (*See id.* ¶ 12.)

Plaintiff alleges Defendants are responsible for the fire because they failed to ensure the broiler was installed properly and in compliance with pertinent fire and building codes. (*See id.* ¶¶ 14–16.) Specifically, Plaintiff alleges Defendant BizDeigns' plans lacked specific guidance to ensure compliance with building and fire codes, including by omitting requirements for non-combustible materials. (*See id.* ¶ 14.) Plaintiff further alleges these inadequate design specifications contributed to Defendant WJP Builders' improper use of combustible materials. (*See id.* ¶ 15.) More precisely, Plaintiff alleges that Defendant WJP Builders failed to install behind the broiler what is known as a U407 wall, a fire resistant interior wall assembly made of 5/8 inch sheet rock with a one-hour fire rating, and that installation of a U407 wall was required. (*See id.* ¶ 13.) To cover the damage resulting from the fire as required by its insurance agreement with Ends Meat, Plaintiff claims it paid or will pay approximately $83,000 to or on behalf of Ends Meat. (*See id.* ¶¶ 17–19.)

## II. Procedural Background

Plaintiff initiated this action on December 3, 2024, asserting one count of negligence against each Defendant. (*See id.* ¶¶ 21–36.) Plaintiff alleges that, as professionals in the fields of architecture and construction, Defendants knew or should have known the risks of noncompliance with fire and building codes, and that their conduct breached a duty to provide plans and perform work in a manner that would have prevented the fire. (*See id.* ¶¶ 23, 31.)

Plaintiff served Defendant BizDesigns on January 6, 2025 and Defendant WJP Builders on January 22, 2025. (*See* Summons, Dkt. Nos. 9, 11.) On February 25, 2025, Defendant BizDesigns appeared and filed notice of a motion to dismiss Plaintiff's claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Motion to Dismiss, Dkt. No. 12.) One day later, the then-assigned Magistrate Judge, the Honorable Lois Bloom, entered an Order acknowledging Defendant BizDesigns' motion and service of Defendant WJP Builders; extending Defendants' time to respond to the Complaint to March 7, 2025; and ordering Plaintiff to serve Defendant WJP Builders with a copy of that Order. (*See* Dkt. Order dated Feb. 26, 2025.) That Order also said, "[i]f [Defendant] WJP Builders Corp does not respond to the complaint by March 7, 2025, [P]laintiff shall take appropriate action[.]" (*Id.*)

After the March 7 deadline passed with no action from Plaintiff, the Court warned that if Plaintiff did not act by March 28, 2026, the Court would recommend dismissal of Plaintiff's claims for failure to prosecute. (*See* Dkt. Order dated Mar. 18, 2025.) In compliance with that Order, Plaintiff requested a certificate of default against Defendant WJP Builders on March 21, 2025, but that request was denied for procedural deficiencies. (*See* Request for Certificate of Default, Dkt. No. 14; Dkt. Order dated Mar. 28, 2025.) Plaintiff requested another certificate of default, and the Clerk of Court entered default against Defendant WJP Builders on April 2, 2025. (*See* Request for Certificate of Default, Dkt. No. 15; Clerk's Entry of Default, Dkt. No. 16.)

On July 7, 2025, Plaintiff and Defendant BizDesigns notified the Court they had reached an agreement to resolve Plaintiff's claims against Defendant BizDesigns. (*See* Letter, Dkt. No. 19.) Plaintiff and Defendant BizDesigns filed a stipulation of dismissal on November 12, 2025, and the Court terminated Defendant BizDesigns from this action. (*See* Stipulation to Discontinue, Dkt. No. 23.)

Plaintiff then moved on November 5, 2025 for default judgment against Defendant WJP Builders, and shortly thereafter filed an amended motion on November 18, 2025. (*See* Dkt. No. 21; Pl's. Mot.) Plaintiff served Defendant WJP Builders with its motion that same day. (*See* Pl's. Mot. p. 5, Certificate of Service.)

**LEGAL STANDARD**

A party seeking default judgment must follow a "two-step process" under Federal Rule of Civil Procedure 55. *See, e.g.*, *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After entry of default, where the claim is not for "a sum certain or a sum that can be made certain by computation," a party must move before the district court for a default judgment. *Id.* 55(b)(1).

The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting Fed. R. Civ. P. 55(a)). A defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial, or by failing to comply with discovery orders." *Gomez v. W. Shore Inn Rest., Inc.*, 22-CV-277, 2023 WL 5337864, at *3 (E.D.N.Y. Jun. 30, 2023), *report and recommendation adopted*, 2023 WL 5334415 (E.D.N.Y. Aug. 18, 2023) (citation modified).

A "default is an admission of all well-pleaded allegations against the defaulting party." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). Accordingly, a motion for default judgment "only establishes . . . liability if those allegations are sufficient to state a cause of action[.]" *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*,

509 F. App'x 54, 56 (2d Cir. 2013). Therefore, the district court must ensure "the plaintiff's allegations, [when accepted as true], establish [the defendant's] liability as a matter of law." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011) (citation modified).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993); *see also Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort"). Accordingly, when granting a motion for a default judgment, the district court must conduct an analysis to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

A district court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria El Greco*, 10-CV-4288, 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *report and recommendation adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012). When considering a motion for a default judgment, the district court must draw all reasonable inferences in favor of the movant. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a pleading's legal conclusions are not assumed to be true." *Chen v. JP Standard Constr. Corp.*, 14-CV-1086, 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Instead, "the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *Chen*, 2016 WL 2909966, at *4. Further, "the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, 18-

CV-6476, 2020 WL 5519200 at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sep. 14, 2020).

**DISCUSSION**

The undersigned begins by ensuring that the Court has subject matter jurisdiction over this matter, and that Plaintiff complied with the relevant procedural requirements to seek default. Then, the undersigned determines whether default judgement is available and warranted in this case, including whether Plaintiff has a viable cause of action against Defendant WJP Builders. Finally, after concluding that Plaintiff is entitled to a default judgment, the undersigned assesses what damages Plaintiff may be due considering its viable claim.

**I. Subject Matter Jurisdiction**

Federal district courts may only adjudicate cases over which they have subject matter jurisdiction. *See, e.g.*, *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). Subject matter jurisdiction exists when the claims at issue arise under federal law or when diversity jurisdiction is present—*i.e.*, when all plaintiffs are citizens of states different from all defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 US.C. §§ 1331, 1332(a). Because Plaintiff's negligence claims do not arise under federal law, this Court only has subject matter jurisdiction over this case by way of diversity jurisdiction.

**A. Diversity Jurisdiction**

For purposes of diversity jurisdiction, a corporation is a citizen of both its state of incorporation and the state where its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *see also, e.g.*, *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). Plaintiff alleges that it is a Pennsylvania corporation with a

principal place of business in Pennsylvania, and that both Defendants have principal places of business in New York. (*See* Compl. ¶¶ 2–4.) Plaintiff's motion for default judgment further asserts Defendant WJP Builders is a New York corporation. (*See* Pl's. Mot. ¶ 8.) These allegations, which establish Defendant WJP Builders does not share a state of incorporation nor principal place of business with Plaintiff in Pennsylvania, are sufficient to establish complete diversity between the two remaining parties.

With regard to the amount in controversy, a party must prove by a "reasonable probability" that the claim is above the $75,000 statutory jurisdictional amount. *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation omitted). Courts in this Circuit "recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Id.* (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

Plaintiff's Complaint originally sought damages "equal to or in excess of $83,000." (*See* Compl. ¶ 37.) Plaintiff's motion for default judgment alleges the total amount Plaintiff paid to the insured was $78,630.19. (*See* Pl's. Mot. ¶ 16; Ex. B, Statement of Loss, Dkt. No. 24-2.) After deducting the $15,000 amount obtained through settlement with Defendant BizDesigns, Plaintiff asserts its remaining damages amount to $63,630.19. (*See* Pl's. Mot. ¶ 17.) Although the amount claimed at this stage exclusive of interest and costs is lower than $75,000, "[s]atisfaction of the § 1332(a) diversity requirements, *i.e.* the amount in controversy and the citizenship of the parties, is determined as of the date that suit is filed." *Wolde–Meskel*, 166 F.3d at 62. Thus, "'[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938)). At the time this suit was filed, Plaintiff was seeking $83,000 from

both Defendants, which is greater than the $75,000 threshold. (*See* Compl. ⁋⁋ 28, 37.) Accordingly, the undersigned finds the amount in controversy is sufficient to establish diversity jurisdiction over this matter.

**B. Standing**

Subject matter jurisdiction also does not exist without constitutional standing. *See, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). In cases involving insurance agreements, standing may be established by subrogation—"the equitable doctrine that allocates responsibility for a loss to the person who in equity and good conscience ought to pay it." *Argonaut Ins. Co. v. Big Interior Constr., Inc.*, 23-CV-2708, 2025 WL 3841373, at *2 (E.D.N.Y. Dec. 17, 2025), *report and recommendation adopted*, 2026 WL 27194 (E.D.N.Y. Jan. 5, 2026); *see also, e.g.*, *Cityside Archives, Ltd. v. Weiss*, 18-CV-5077, 2020 WL 3972310, at *4 (S.D.N.Y. July 13, 2020) (explaining that purpose of subrogation is "to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full"). In such cases, the "subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies." *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 255 (S.D.N.Y. 2001) (quotation omitted); *see also, e.g.*, *Everest Reins. Co. v. Collector's Fantasy of Brooklyn, Inc.*, 09-CV-5015, 2012 WL 2953955, at *3 (E.D.N.Y. July 19, 2012) (holding plaintiff insurer had a "viable subrogation claim, which vested when [the plaintiff's predecessor] paid [the insured] for its losses" in accordance with an insurance policy).

Here, Plaintiff establishes it received payments from the insured, Ends Meat, pursuant to the insurance policy. (*See* Pl's. Mot. Ex. G, Copies of Payments to Insured, Dkt. No. 24-7.) Plaintiff also establishes it paid Ends Meat for its losses resulting from the fire. (*See* Pl's. Mot.

⁋ 16; Ex. B, Statement of Loss; Dkt. No. 24-2.) As a result, Plaintiff has standing via a valid subrogation claim to recover from Defendant WJP Builders through default judgment. *See, e.g.*, *Argonaut Ins. Co.*, 2025 WL 3841373, at *2 (finding standing to sue through subrogation from defendant whose negligent actions allegedly caused fire at property of insured); *Wellsville Manor LLC*, 22-CV-1229, 2025 WL 2173642, at *6 (E.D.N.Y. July 31, 2025); (finding insurer had standing through subrogation to sue party that allegedly negligently replaced insured's roof).

## II. Service & Local Rule Requirements

The undersigned finds Plaintiff satisfied the requirements of Federal Rule of Civil Procedure 55 and Local Rule 55.2 by obtaining and serving Defendant WJP Builders with a certificate of default and a copy of Plaintiff's motion for default judgment and supporting documents at Defendant WJP Builders' last known business address, as well as through the Secretary of State. (*See* Pl's. Mot. p. 24, Certificate of Service; Clerk's Entry of Default, Dkt. No. 16.)

## III. Propriety of Default Judgment

Before addressing the substance of Plaintiff's claims, the undersigned considers whether default judgment is appropriate under these circumstances. "In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron*, 10 F.3d at 96); *see also Trico Tarek Factor v. Jetax Inc.*, 24-CV-3731, 24-CV-2409, 2025 WL 2625376, at *29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether granting a default judgment is warranted in the first instance."). These factors are "(1) whether the default was willful; (2) whether setting aside

the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96. "Willfulness 'is the most significant factor' but is not dispositive." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (quoting *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)).

With regard to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017) (collecting cases), *report & recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017). As to the second factor, a defense is not meritorious if there is no presentation of evidence in defense of the claims. *See, e.g.*, *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998).

Here, Defendant WJP Builders' failure to file an answer, otherwise respond to the Complaint, or participate in this case in any way demonstrates willfulness. *See supra* p. 4; *see also, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31 (E.D.N.Y. 2015) (finding defendant's nonappearance and failure to respond to complaint demonstrated willfulness). And in the absence of the presentation of evidence in defense of the claims, the undersigned also finds Defendant WJP Builders has no meritorious defense. *See, e.g.*, *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

As to the third factor, a plaintiff seeking default "must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the [c]ourt in another manner were the default to be [not entered or] vacated." *Weingeist v. Tropix Media & Ent.*, 20-CV-275, 2022 WL

970589, at *11 (S.D.N.Y. Mar. 30, 2022) (quotation omitted). The undersigned finds Plaintiff would be prejudiced here because it will likely not be able to recover for its claims should this motion be denied. *See, e.g.*, *Schlesinger v. Karras*, 23-CV-9362, 2026 WL 825387 (E.D.N.Y. Jan. 12, 2026) (finding prejudice to plaintiff if default motion seeking damage for negligence and negligent construction were denied because plaintiff would be unable to otherwise recover). Accordingly, all three factors weigh in favor of granting Plaintiff's request for a default judgment.

## IV. Liability

Because all three factors weigh in Plaintiff's favor, the undersigned finds default judgment is appropriate, so long as Plaintiff's allegations against Defendant WJP Builders are sufficient to establish liability. As such, the undersigned now examines the viability of Plaintiff's negligence claim against Defendant WJP Builders.

### A. Choice of Law

To assess Defendant WJP Builders' liability to Plaintiff for negligence, the undersigned must first determine which negligence law to apply to Plaintiff's claim. Plaintiff has not advanced any choice of law argument. Nevertheless, "[a] federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). "Under New York choice of law rules, courts look to the jurisdiction with the greatest interest in regulating the tortious conduct at issue." *Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*, 793 F.Supp.2d 651, 673 (S.D.N.Y. 2011). In cases like this one involving insurance contracts, "New York courts look to 'the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place

of business.'" *Homestead Vill. Assoc., L.P. v. Diamond State Ins*, 818 F. Supp. 2d 642, 646 (E.D.N.Y. 2011) (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990)). "Of these factors, the location of the insured risk is given the greatest weight." *Homestead Vill. Assoc., L.P.*, 818 F. Supp 2d at 646. Even in circumstances in which a choice of law determination cannot be made with any certainty, a district court may apply the law of the forum state. *See, e.g.*, *State Farm Fire & Cas. Co. v. Advanced Chimney, Inc.,* 13-CV-4608, 2014 WL 4438899, at *4 (E.D.N.Y. Aug. 11, 2014), *report and recommendation adopted*, 2014 WL 4439102 (E.D.N.Y. Sep. 8, 2014) (collecting cases).

Based on the facts alleged in the Complaint, the undersigned finds New York likely has the greatest interest in regulating the tortious conduct at issue here, and the factors relevant to cases involving insurance contracts also weigh in favor of applying New York law. Defendant WJP Builders is a New York corporation, with its principal place of business in New York. *See supra* p. 7– 8; (*see also* Compl. ¶ 3; Pl's. Mot. ⁋ 8.) The insured's principal place of business is also in New York, and the Property is located in New York. *See supra* p. 2; (s*ee also* Compl ¶¶ 6, 18.) Accordingly, the undersigned applies New York law to Plaintiff's negligence claim.

**B. Statute of Limitations**

Next, the undersigned considers whether Plaintiff's negligence claim against Defendant WJP Builders is timely and concludes that it is. New York's statute of limitations for negligence actions resulting in damage to property is three years from the date of the incident, and Plaintiff timely initiated this action on December 3, 2024, within three years of the date of the fire on January 1, 2022. *See supra* p 3; N.Y. C.P.L.R. § 214(4).

### C. Elements of Negligence

The undesigned next analyzes whether Plaintiff's claim against Defendant WJP Builders establishes the elements of negligence pursuant to New York law. To recover on a claim of negligence under New York law, a plaintiff must show (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result. *See, e.g.*, *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013).

New York law does not recognize a cause of action for the negligent performance of a contract. *See, e.g.*, *Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003). Thus, to prevail on its negligence claim, Plaintiff must demonstrate that Defendant WJP Builders "breached a duty distinct from, or in addition to, [a] breach of contract." *Am. Tel. & Tel. Co. v. New York City Hum. Res. Admin.*, 833 F. Supp. 962, 984 (S.D.N.Y. 1993), *corrected* (Sep. 20, 1993); *accord Dorking Genetics v. United States*, 76 F.3d 1261, 1269–70 (2d Cir. 1996) (finding plaintiff could maintain negligence action for a service contract provided he could demonstrate violation of a legal duty independent of the contract).

Plaintiff makes general allegations that Defendant WJP Builders "had a duty to perform work in a workmanlike fashion and a duty to not cause harm to the property of others." (Compl. ⁋ 24.) Plaintiff alleges these duties included proper reinstallation of the broiler in compliance with building and fire codes. (*See id.* ⁋⁋ 13, 16, 25.) Although these allegations do not identify the exact legal duty owed, "there is no requirement to allege the specific duty that is being breached, because the definition and scope of an alleged tortfeasor's duty owed to a plaintiff is a question of law." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024) (quotation modified), *motion to certify appeal denied*, 2024 WL 4307975 (S.D.N.Y. Sep. 26, 2024).

The undersigned construes Plaintiff's allegations as asserting that Defendant WJP Builders breached its duty of care and its duty to abide by relevant fire codes in performing its work for Ends Meat. The undersigned finds Plaintiff's invocation of these duties sufficient to establish a duty independent from any contract between Ends Meat and Defendant WJP Builders. *See, e.g.*, *Advanced Chimney, Inc.*, 2014 WL 4438899, at *7 (finding allegations that defendant "had a duty to perform its work in a safe, proper and workmanlike manner in accordance with all state and local building codes and/or regulations and/or the common standards and practices of the trade and industry" sufficient to establish legal duty independent of contractual obligations); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.*, 02-CV-0504, 2005 WL 550940, at *3 (S.D.N.Y. Mar. 9, 2005) (granting summary judgment in part after finding defendant owed duty independent of contract through alleged failure to abide by New York State Uniform Fire Prevention and Building Code and Occupational Safety and Health Act regulations), *amended*, 2006 WL 59770 (S.D.N.Y. Jan. 3, 2006). Finally, Plaintiff's allegations also sufficiently establish this duty runs between it and WJP Builders through subrogation. *See supra* pp. 9–10; *see also, e.g.*, *Everest Reins. Co.*, 2012 WL 2953955, at **2–3 (finding plaintiff could recover losses sustained through subrogation on default judgment for negligence claim against defendant). Accordingly, the undersigned finds Defendant WJP Builders establishes the elements of a duty to Plaintiff and an accompanying breach of that duty.

As to the third element of negligence, the undersigned must evaluate whether there is a reasonable possibility that Plaintiff's injury—*i.e.*, the damages to the Property and ensuing reimbursement Plaintiff paid to Ends Meat—were a reasonably foreseeable as a result of Defendant WJP Builders' conduct. Under New York law, to make a *prima facie* showing of proximate cause, a plaintiff must demonstrate that the defendant's negligence was a "substantial

cause" of the events creating the injury. *Maheshwari v. City of New York*, 810 N.E.2d 894, 898 (2004) (quoting *Derdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (1980)); *see also Marin v. Paynter*, 23-CV-6498, 2026 WL 1992938, at *5 (E.D.N.Y. Jul. 10, 2026) (explaining proximate cause exists under New York law "where it is a substantial cause of the events" which resulted in injury) (internal citations omitted).

Here, Plaintiff alleges, *inter alia*, that its damages occurred as a result of the fire, and that the fire, in turn, was caused by Defendant WJP Builders' failure to properly install the broiler. *See supra* pp. 2–3. These failures included improperly enclosing an opening where the broiler was mounted and using a piece of plywood, which is not a fire-resistant material, in the wall behind the broiler. *See supra* p. 2. Accepting those allegations as true, the undersigned finds it is reasonably foreseeable that a fire could occur based on that conduct.

The undersigned next considers whether Plaintiff's allegations that Defendant BizDesigns' negligent conduct contributed to the fire impacts the showing that WJP Builders' negligence was a proximate cause of Plaintiff's injury. If one party's negligence proximately causes an injury, it does not mean that another party's negligence does not, as there may be "more than one proximate cause of an injury." *Dooley v. United States*, 83 F.4th 156, 163 (2d Cir. 2023) (internal quotations and citations omitted). But proximate cause can be severed by another party's intervening act if such an act is "extraordinary under the circumstances," rather than a foreseeable consequence of the defendant's negligence. *Id.* (quoting *Derdiarian*, 414 N.E.2d at 670); *see also McCullough v. United States*, 538 F. Supp. 694, 699 (E.D.N.Y. 1982) ("In order to avoid liability, an intervening cause must so entirely supersede (the first actor's) negligence that it alone without his negligence contributing thereto in any degree produces the injury.") (quotation omitted).

Here, although Plaintiff alleges that Defendant BizDesigns' specifications were negligent in a way that could have contributed to the fire, Plaintiff's allegations that Defendant WJP Builders installed the broiler without following Defendant BizDesigns' specifications, and that Defendant WJP Builders used non fireproof materials when it should have known not to, are sufficient to establish that Defendant BizDesigns' conduct was not an intervening cause. Thus, assuming the facts in the Complaint are true, Plaintiff's damages can be proximately and substantially caused by Defendant WJP Builders' conduct even considering Defendant BizDesigns' own negligence. Because the undersigned finds all three elements of negligence satisfied, Plaintiff has sufficiently established Defendant WJP Builders' liability for negligence for purposes of recovering by way of default judgment.

## V. Damages

The undersigned proceeds by evaluating whether Plaintiff has provided adequate support for the damages related to Defendant WJP Builders' negligence.

### A. Negligence Damages

Plaintiff seeks damages against Defendant WJP Builders in the amount of $63,630.19 for the losses it paid to its insured as a result of the fire at the Property. (*See* Pl's. Mot. ⁋ 19.) This amount is the total sought by Plaintiff after reducing its damages by the $15,000 settlement it reached with Defendant BizDesigns. (*See id.* ⁋ 17.)

In support of its damages, Plaintiff submits a Summary of Loss document. (*See* Pl's. Mot. Ex. B, Dkt. No. 24-2.) The Summary of Loss document is supported by an additional Damages Package Index of over 20 pages.[2] (*See* Dkt. Nos. 24-3 to -7.) Among those pages is a spreadsheet

[2] Some of these attachments to Plaintiff's motion on the docket were not readable by the Court. At the Court's direction, Plaintiff provided the Court with a clearer version of this document.

describing each category of damages claimed, their price, the amount claimed under the insurance policy, and the actual cash value of each category. (*See* Pl's. Mot. Ex. B, Summary of Loss, Dkt. No. 24-4.) The total amount for each category of damages identified in that spreadsheet is $70,130.19. (*See id.*)

Plaintiff further submits proof of five payments made to Ends Meat: (i) a $25,000 payment described as being for "ADVANCE ON BETTERMENTS"; (ii) a $16,325.06 payment described as being for "BETTERMENT (REPLACEMENT COST AMOUNT)"; (iii) a $10,234.16 payment described as being for "FIRE LOSS – BUSINESS PERSONAL PROPERTY – ACV PAYMENT";[3] (iv) a $7,500 payment described as being for "LOSS OF INCOME – 4.5 MONTHS"; and (v) a $18,570.97 payment described as being for "FIRE LOSS – BPP – ACV + BETTERMENTS – RC." (*See* Dkt. No. 24-7.) According to the undersigned's calculations, the total amount paid by Plaintiff to Ends Meat with these four payments is $77,630.19. (25,000 + 16,325.06 + 10,234.16 + 7,500 + 18,570.97 = 77,630.19). Adding the $1,000 deductible identified in Plaintiff's Statement of Loss, the undersigned Plaintiff has provided sufficient documentation to support a claim for $78,630.19. (*See* Pl's Mot. Ex. B, Statement of Loss, Dkt. No. 24-2.)

### 1. Offset Due to Settlement with Defendant BizDesigns

Plaintiff seeks a judgment which offsets the $78,630.19 in alleged damages by $15,000 to account for Plaintiff's settlement with Defendant BizDesigns. (*See* Pl's Mot. ⁋ 19.) Thus, Plaintiff

[3] There is a discrepancy in the provided supporting documentation. At some points, this payment is identified as for $10,234.16, but at other points it is identified as $10,324.16. (*See* Pl's Mot. pp. 16, 33. Because the $10,234.16 amount is identified more often, and because the undersigned can only get to the total amount Plaintiff claims by using the $10,234.16, the undersigned will use the $10,234.16 amount for purposes of calculating recommended damages.

only seeks to recover $63,630.19. (*See id.*) The undersigned considers whether such an offset is appropriate.

Federal common law controls on the question of whether a defendant in a federal action "is entitled to a credit against judgment for the settlement by another party to the dispute." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). A district court may use its discretion in considering the circumstances and the amount of the settlement in deciding whether to apply an offset. *See, e.g.*, *Johnson v. Dumphy*, 09-CV-02758, 2011 WL 6101957, at *5 (E.D.N.Y. Nov. 14, 2011), *report and recommendation adopted*, 2011 WL 6111236 (E.D.N.Y. Dec. 7, 2011).

Generally, "it is the burden of the non-settling defendants "to show 'the extent to which a recovery against [them] would be duplicative of the plaintiff's recovery from settling defendants.'" *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 482–83 (E.D.N.Y. 2013) (quoting *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 447 (S.D.N.Y. 2009)). Relying on this principle, courts have held in some circumstances that damages should not be offset by any settlement with non-defaulting defendants. *See, e.g.*, *Kotuwage v. NSS Petrol. Inc.*, 15-CV-4374, 2018 WL 1189332, at **12–13 (E.D.N.Y. Feb. 8, 2018) (declining to offset damages with respect to defaulting defendant in a FLSA and NYLL case), *report and recommendation adopted in relevant part*, 2018 WL 1187397, (E.D.N.Y. Mar. 7, 2018); *Godfrey v. Soto,* 06-CV-428, 2007 WL 2693652, at **6–7 (E.D.N.Y., Sep. 10, 2007) ("The few New York courts confronted with a non-settling defendant who has defaulted have decided that the windfall should not accrue to the benefit of the party who has refused to participate in litigation").

Under the circumstances of this matter, in which Plaintiff seeks default, the allegations establish negligence by both Defendants, and the amount does not constitute a windfall considering both Defendants' alleged negligence, the undersigned recommends the $15,000 offset be applied

here because it is explicitly requested by Plaintiff. *See, e.g.*, *Grafman*, 968 F. Supp. 2d at 482–83 (recognizing that in circumstances where offsets were granted to defaulting defendants, "plaintiffs have agreed to a set-off") (collecting cases). The undersigned also exercises its discretion to apply this offset under these circumstances because Plaintiff's damages calculations were not as well-explained as they otherwise could have been. *Cf. Savarese v. Cirrus Design Corp.*, 09-CV-1911, 2010 WL 532289, at *7 (S.D.N.Y. Feb. 8, 2010) ("Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award costs."). Accordingly, the undersigned recommends that Plaintiff be awarded $63,630.19 for Defendant WJP Builders' negligence (78,630.19 – 15,000 = 63,630.19).

**B. Other Damages**

Along with compensatory damages for negligence, Plaintiff seeks "interest, costs, and other such relief as this Court deems proper." (Compl. ⁋ 37.) Despite seeking costs, Plaintiff does not provide any documentation of attorneys' fees or other expenses associated with its motion. Due to that failure to provide appropriate documentation, the undersigned recommends against awarding those costs and proceeds by evaluating Plaintiff's requests for interest.

**1. Pre-judgment Interest**

Plaintiff does not specify the categories of interest it seeks. Nevertheless, when federal jurisdiction is premised on diversity, New York state law governs and allows an award of pre-judgment interest as a matter of right in an action for negligence. *See, e.g.*, *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) (reversing district court's denial of pre-judgment interest on state law claim in diversity case); *St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co.*, 96-CV-502, 1999 WL 782333, at *1 (W.D.N.Y. Sep. 30, 1999) ("An award of statutory

prejudgment interest is available as a matter of right on a judgment in a subrogation action brought by an insurance company to recover for negligent injury to its insured's property.)

Under New York law, pre-judgment interest "shall be computed from the earliest ascertainable date the cause of action existed" at the rate of nine percent per year. *See* N.Y. C.P.L.R. §§ 5001(b), 5004 (McKinney 2026). In insurance cases, prejudgment interest accrues from the date the insurance company makes payment. *See, e.g.*, *Argonaut Ins. Co.*, 2025 WL 3841373, at *4. Here, Plaintiff made its first payment to the insured on February 4, 2022. (*See* Dkt. No. 24-7.) Accordingly, the undersigned recommends Plaintiff be awarded pre-judgment interest at a rate of nine percent per year from February 4, 2022 to the date judgment is entered.

**2. Post-judgment Interest**

Plaintiff is also entitled to post-judgment interest. *See* 28 U.S.C. § 1961 (ensuring prejudgment interest award is mandatory in any civil case where money damages are recovered). Post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Here, the undersigned recommends Plaintiff be awarded post-judgment interest calculated from the date the Clerk of Court enters judgment in this matter until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends the Court grant Plaintiff's motion for default judgment against Defendant WJP Builders and award Plaintiff the following relief, totaling $63,630.19, plus pre- and post-judgment interest:

1. $63,630.19 in damages for negligence;
2. pre-judgment interest calculated at a rate of nine percent from February 4, 2022 through the date judgment is entered; and
3. post-judgment interest at the federal rate through the date judgment is entered.

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed within 14 days of service of this Report and Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any requests for an extension of time to file objections must be directed to Judge Donnelly. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party [forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue.").

**SO ORDERED.**

Dated: Brooklyn, New York
August 19, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York